NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PHIBRO ANIMAL HEALTH U.S., INC., | : | |
| | : | Civ. No. 03-2664 (GEB) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| CORNERSTONE AG PRODUCTS, | : | |
| | : | |
| Defendant. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of plaintiff Phibro Animal Health, U.S., Inc. ("Plaintiff"), for summary judgment of both its Complaint and the counterclaims of defendant Cornerstone Ag Products ("Defendant"). Plaintiff's motion was filed on April 25, 2006. This action was reassigned to the undersigned on August 18, 2006. The Court has reviewed and fully considered the parties' submissions and has decided the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Plaintiff's motion is granted.

## I. BACKGROUND

On September 1, 2001, Plaintiff entered into a Distributorship Agreement with Defendant, under which Defendant became the exclusive distributor of Rumatel, Plaintiff's cattle and goat de-wormer product, on a "goat specific" label only. Plaintiff is the exclusive manufacturer of Rumatel and sells it only in the concentration of 88 grams per pound. The

Distributorship Agreement initially ran from September 1, 2001, to June 30, 2002, but contained an automatic extension, pursuant to conditions precedent, that would renew the Agreement for subsequent contract years of July 1 to the following June 30.  Notwithstanding the automatic extension, the Distributorship Agreement would terminate on June 30, 2005, unless the parties mutually agreed to renew its terms.

By invoice dated November 26, 2001, Plaintiff sent a shipment of Rumatel to Defendant. Defendant admits to accepting the shipment, because it was not defective and was fit for its particular purpose, and reselling it for a profit.  Defendant has refused to pay the amount of $140,400 owed, asserting that the amount of the invoice is in dispute, but does not deny that the invoice has not been paid.

On or about June 3, 2003, Plaintiff filed its Complaint asserting claims of breach of contract, unjust enrichment, account stated, and conversion, in addition to seeking a declaratory judgment that the Distributorship Agreement expired by its own terms.  On August 20, 2003, Defendant filed its Answer and counterclaims against Plaintiff, and on August 26, 2001, filed its Amended Answer with counterclaims.  Defendant asserted claims of breach of contract with respect to the exclusivity provisions of the Distributorship Agreement and intentional interference with prospective economic advantage, while seeking reformation of the contract, injunctive relief, and restitution despite the alleged breach.  On April 25, 2006, Plaintiff filed the instant motion for summary judgment on its Complaint and on Defendant's counterclaims.

2

## II. DISCUSSION

A.  <u>Standard for a Motion for Summary Judgment</u>

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(c); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Orson, Inc. v. Miramax Film Corp.</u>, 79 F.3d 1358, 1366 (3d Cir. 1996); <u>Healy v. New York Life Ins. Co.</u>, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), <u>cert.</u> <u>denied</u>, 490 U.S. 1098 (1989); <u>Hersh v. Allen Prods. Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995); <u>Hancock Indus. v. Schaeffer</u>, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof

on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit.");  Anderson, 477 U.S. at 249;  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a

4

genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted). However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

B. Defendant's Acceptance of and Failure to Pay for the Shipment is Undisputed

Plaintiff asserts that there are no genuine issues of material fact with respect to Defendant's liability as to the invoice. Defendant counters that the amount owed, if any, is a material fact in dispute to be determined at trial. Defendant alleges that the amount owed is in dispute because of Plaintiff's alleged breach of the exclusivity provision of the Distributorship Agreement and because of Defendant's entitlement to an offset of damages pursuant to its counterclaims. However, Defendant does not contest its acceptance of the November 26, 2001 shipment and its subsequent use of the shipment for profit. Furthermore, those facts are supported by undisputed evidence in the record.

First, with respect to Defendant's claim regarding exclusivity, it is more appropriately

5

addressed in the context of Defendant's counterclaims.  Furthermore, it does not create a genuine

issue of material fact as to Defendant's acceptance of and obligation to pay for the shipment.

The New Jersey Uniform Commercial Code defines acceptance as occurring when the buyer:

> (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
> (b) fails to make an effective rejection (subsection (1) of 12A:2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
>
> (c) does any act inconsistent with the seller's ownership; but is such act is wrongful as against the seller it is an acceptance only if ratified by him.

N.J. Stat. Ann. § 12A:2-606(1).  It is undisputed that Defendant accepted the shipment, as

defined above.  Consequently, pursuant to Section 2-607, Defendant "must pay at

the contract rate for any goods accepted."  N.J. Stat. Ann. § 12A:2-607(1).

Second, with respect to Defendant's offset claim, under similar circumstances, this Court

granted partial summary judgment where "[t]he plaintiff delivered the [goods] at the contract

price indicated on the invoices" and defendant did not reject the goods, since there was no

genuine issue as to any material fact regarding the plaintiff's right to recover on the invoices.

Electro-Catheter Corp. v. Surgical Specialties Instrument Co., 587 F. Supp. 1446, 1456 (D.N.J.

1984).  The Court noted "[t]he defendant's assertions of its entitlement to an offset," but

concluded that it "does not preclude this court from granting partial summary judgment on these

contract claims since no material facts remain for adjudication."  Id. at 1456-57 (citation

omitted).  Here, unlike in Electro-Catheter, although Defendant alleges that the price of the goods

are in dispute, that is a matter affecting Defendant's counterclaims, as noted above, and not

Plaintiff's Complaint.  Consequently, Defendant's claims of an entitlement to an offset in the

instant matter are not grounds for denying Plaintiff's motion.

As to Plaintiff's fifth claim seeking a declaratory judgment that the Distributorship Agreement expired by its own terms on June 30, 2002, Plaintiff cited to deposition testimony of Defendant's President, James Rosenbaum, where he stated that Defendant did not purchase at least $380,000 from Plaintiff during 2001.  (See Deposition of James Rosenbaum at 52-54, Pl.'s Exhibit 4.)  The undisputed evidence in the record further demonstrates Defendant's failure to do so.  Although Defendant now asserts that it purchased $393,300 during calendar year 2001, this amount apparently includes the amount of the invoice in question, which has not been paid for. Accordingly, pursuant to Paragraph 8.1 of the Distributorship Agreement, the automatic renewal provision was not triggered and the Distributorship Agreement expired as of June 30, 2002.

Therefore, summary judgment must be granted with respect to Plaintiff's claims. Defendant is thereby liable to Plaintiff for the amount of the invoice ($140,400) plus interest at 2% per month as stated on the invoice, subject to any offset from Defendant's counterclaims.

C.  Defendant's Counterclaims Fail as a Matter of Law

Defendant's counterclaims arise from the assertion that Plaintiff breached the exclusivity provision of the Distributorship Agreement by contacting another distributor to sell Rumatel.  In the instant motion, Plaintiff asserts that Defendant's claims lack merit and seeks summary judgment on the claims as a matter of law.

Defendant's first claim alleged a breach of contract by Plaintiff in contacting Archer Daniels Midland ("ADM"), in or around March 2003, regarding the sale of Rumatel.  However, as discussed above, the Distributorship Agreement expired by its own term before that date due to Defendant's failure to purchase the required amount during calendar year 2001.  Consequently,

7

there is no breach of contract and summary judgment is granted to Plaintiff with respect to Defendant's first counterclaim.

Defendant's second claim assumes a valid contract between the parties and asserts that Plaintiff intentionally interfered with Defendant's prospective economic advantage by dealing directly with ADM. However, Defendant's proposed agreement to sell ADM its exclusive right to sell Rumatel, as stated in the counterclaim, would have been rendered "null void, and of no effect" without the prior written consent of Plaintiff, pursuant to the Assignability section in Paragraph 13 of the Distributorship Agreement. Consequently, Defendant has no damages and summary judgment is granted with respect to Defendant's second counterclaim.

Defendant's third claim sought contract reformation, alleging that the intention of the parties to the contract was to grant Defendant the exclusive rights for manufacturing, labeling, distributing, and selling Rumatel on a goat-specific basis. However, the Distributorship Agreement explicitly appointed Defendant as only the exclusive distributor of Rumatel on a goat specific label. Furthermore, the Distributorship Agreement explicitly provided that it "represent[ed] and incorporat[ed] the entire understanding between the parties . . . with respect to the subject matter of this Agreement . . . ." (Distributorship Agreement at ¶ 18.1.)

The Third Circuit has noted that where a contract is clear, "it is rare that such a document will be reformed by a court." Raiczyk v. Ocean County Veterinary Hosp., 377 F.3d 266, 270 (3d Cir. 2004)(citation omitted). The court then reasoned that "[t]he power of reformation should be used only when the mistake is material, when there would not be prejudice to the other party (besides the loss of the bargain), and upon a showing that the [moving party] exercised reasonable care." Id. (citations omitted). Defendant has not done so here, and furthermore

8

cannot show that there would be no prejudice to the other party because reformation of the contract with respect to that provision alone would result in Plaintiff giving up more rights than it apparently intended, without additional consideration.  Consequently, summary judgment is granted with respect to Defendant's third counterclaim.

Defendant's fourth counterclaim sought an injunction prohibiting Plaintiff from selling Rumatel to ADM or others in violation of the Distributorship Agreement.  However, as Plaintiff notes, even if the conditions precedent occurred and the Agreement was renewed beyond its initial term, it expired as of June 30, 2005 absent explicit renewal by the parties.  No renewal having occurred, the Distributorship Agreement has expired and Defendant's counterclaim for an injunction is moot.  Consequently, summary judgment is granted with respect to Defendant's fourth counterclaim.

Lastly, Defendant's fifth counterclaim sought restitution of the amount Defendant allegedly lost by virtue of Plaintiff's transactions with ADM despite the breach of contract. However, as discussed above, Defendant's proposed agreement with ADM would have violated the Distributorship Agreement with Plaintiff and therefore Defendant has no entitlement to that amount.  Moreover, as Plaintiff notes, Defendant's claim here seeks compensatory damages, which are explicitly prohibited by the Distributorship Agreement.  (See Distributorship Agreement at ¶ 5.4.)  Consequently, summary judgment is granted with respect to Defendant's fifth counterclaim.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted.

Accordingly, Defendant's counterclaims are dismissed and there shall be no offset of damages, with Defendant liable for the amount of the invoice plus interest.  An appropriate form of order accompanies this Memorandum Opinion and the matter shall be marked closed.

Dated: August 31, 2006

                                             __s/ Garrett E. Brown, Jr._____
                                             GARRETT E. BROWN, JR., U.S.D.J.